1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

IRA J. GAINES and LANNY LAHR,

Case No.: 2:22-cv-01206-APG-MDC

4

Plaintiffs

**Order Granting in Part Plaintiffs' Motion
to Dismiss Defendants' First Amended
Counterclaims**

5

v.

6

BRIAN KEASBERRY and AARIF JAMANI,

[ECF No. 29]

7

Defendants

8

AND ALL RELATED COUNTERCLAIMS
AND THIRD-PARTY CLAIMS

9

10          Plaintiffs Ira Gaines and Lanny Lahr sue defendants Brian Keasberry and Aarif Jamani

11   for the alleged fraudulent transfer of Series A Preferred stock in a company called Gen 2

12   Technologies, Inc. (Gen 2). ECF No. 6.  Keasberry and Jamani filed an answer and

13   counterclaims against Gaines, Lahr, Daniel Serruya, and Michael Kovacocy. ECF No. 7 at 10.

14   Gaines and Lahr previously moved to dismiss the counterclaims. ECF No. 9.  I granted that

15   motion in part, with leave to amend. ECF No. 26.  Keasberry and Jamani thereafter filed

16   amended counterclaims and a third-party complaint. ECF No. 28.  Keasberry and Jamani assert a

17   claim for civil conspiracy against Gaines, Lahr, Serruya, and Kovacocy.  Keasberry asserts

18   claims for breach of fiduciary duty and equitable indemnity against Serruya and Kovacocy, and

19   aiding and abetting a breach of fiduciary duty against Gaines and Lahr.

20          Gaines and Lahr move to dismiss the amended counterclaims on various grounds. ECF

21   No. 29.  I set forth the factual background in my prior order and the parties are familiar with it,

22   so I do not repeat those facts here except where necessary to resolve the motion. *See* ECF No.

23   26.  Serruya and Kovacocy still have not appeared in this case.  As I stated in my prior order,

1  Gaines and Lahr do not have standing to make arguments on behalf of Serruya and Kovacocy, so

2  this order does not dismiss any claims against Serruya and Kovacocy.

3    I grant in part the motion to dismiss.  I dismiss with prejudice Keasberry's conspiracy

4  claim because it is claim precluded.  I dismiss with prejudice Jamani's conspiracy claim because

5  he cannot allege damages.  I dismiss with prejudice portions of Keasberry's aiding and abetting

6  claim as precluded.  I grant Keasberry leave to amend.

7  **II.  ANALYSIS**

8    In considering a motion to dismiss, I take all well-pleaded allegations of material fact as

9  true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.*

10 *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of

11 legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation*

12 *v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A party asserting claims must

13 make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v.*

14 *Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and

15 conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

16    Additionally, claims grounded in fraud must satisfy both this plausibility standard and

17 Federal Rule of Civil Procedure 9's heightened pleading requirement to "state with particularity

18 the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "To properly plead fraud with

19 particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of

20 the misconduct charged, as well as what is false or misleading about the purportedly fraudulent

21 statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.

22 2018) (quotation omitted).

23 / / / /

**A. Claim Preclusion**

Gaines and Lahr previously argued that the counterclaims are precluded by prior lawsuits, but I denied that portion of the motion to dismiss because Gaines and Lahr did not meet their burden of establishing claim preclusion. ECF No. 26 at 9-11.  Gaines and Lahr again argue that the amended counterclaims are claim precluded by: (1) the Arizona action in which Gaines and Lahr sued Keasberry to collect on the promissory notes and Keasberry defaulted, and (2) the Control Action that Keasberry brought against Serruya and Kovacocy in Nevada state court regarding who had the right to control Gen 2.

Keasberry and Jamani argue this is nothing but a motion for reconsideration and should be denied because Gaines and Lahr do not identify any new law, new facts, or clear error to support reconsideration.  Alternatively, they argue they are not claim precluded.

Although Gaines and Lahr seek a redo on the claim preclusion issue, Keasberry and Jamani have filed an amended counterclaim, to which Gaines and Lahr are entitled to respond. Additionally, I did not rule that the counterclaims were not precluded.  I ruled only that Gaines and Lahr had not, at that time, met their burden of showing preclusion.  Consequently, I will consider Gaines and Lahr's motion to dismiss based on claim preclusion.

Keasberry filed the Control Action in Nevada state court, while Gaines and Lahr obtained the default judgment in Arizona.  Consequently, Nevada rules of claim preclusion apply to the Control Action, while Arizona rules apply to the default judgment. *See White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).  Under both states' law, the party asserting that a judgment has preclusive effect bears the burden of proving it. *Lawrence T. v. Dep't of Child Safety*, 438 P.3d 259, 261-62 (Ariz. Ct. App. 2019); *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d

1 709, 718 (Nev. 2009) (en banc), *modified on other grounds by Garcia v. Prudential Ins. Co. of*

2 *Am.*, 293 P.3d 869 (Nev. 2013) (en banc).

3    In Nevada, claim preclusion requires that "(1) the final judgment is valid, (2) the

4 subsequent action is based on the same claims or any part of them that were or could have been

5 brought in the first case, and (3) the parties or their privies are the same in the instant lawsuit as

6 they were in the previous lawsuit, or the defendant can demonstrate that he or she should have

7 been included as a defendant in the earlier suit and the plaintiff fails to provide a good reason for

8 not having done so." *Weddell v. Sharp*, 350 P.3d 80, 85 (Nev. 2015) (simplified) (en banc); *see*

9 *also Lawrence T.*, 438 P.3d at 262.  If a compulsory counterclaim was not raised, the party who

10 should have asserted it may be claim precluded in a subsequent litigation. *Mendenhall v.*

11 *Tassinari*, 403 P.3d 364, 371-72 (Nev. 2017).  However, a counterclaim is not compulsory unless

12 it is mature at the time of the pleading. *Id.* at 37.  Nevada also has an exception where claim

13 preclusion does not apply to an after-acquired claim, which occurs when "a party does not know

14 of a claim until after its pleading." *Id.*  But a claim "is not an after-arising claim if the lack of

15 knowledge was due to [the party's] own negligence or lack of reasonable diligence." *Id.*

16    Arizona's claim preclusion rules are similar.  Claim preclusion requires  "(1) an identity

17 of claims in the suit in which a judgment was entered and the current litigation, (2) a final

18 judgment on the merits in the previous litigation, and (3) identity or privity between parties in the

19 two suits." *Lawrence T.*, 438 P.3d at 262 (quotation omitted).  As to the first element, Arizona

20 courts "apply the same evidence test, precluding a second action when no additional evidence is

21 needed to prevail in the second action than that needed in the first." *Id.* (quotation omitted); *see*

22 *also Huffman v. Magic Ranch Ests. Homeowners Ass'n*, No. 2 CA-CV 2022-0055, 2023 WL

23

3000820, at *3 (Ariz. Ct. App. Apr. 19, 2023) (stating that the Arizona Supreme Court "has not yet adopted the transactional approach," and continues to apply the same evidence test).

In Arizona, compulsory counterclaims that are not asserted at the time of a prior action are later subject to claim preclusion. *See Levin v. Hindhaugh*, 804 P.2d 839, 840 (Ariz. Ct. App. 1990). "A counterclaim is compulsory if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third persons over whom the court cannot acquire jurisdiction." *Id.* "However, a claim must be 'mature' to be compulsory." *Lansford v. Harris*, 850 P.2d 126, 132 (Ariz. Ct. App. 1992).

The parties appear to agree that Arizona would apply the rule from Nevada's *Mendenhall* case that after-arising claims are not claim precluded but a claim is not after-arising if the lack of knowledge of the claim was due to the party's own negligence or lack of reasonable diligence. They do not cite Arizona law for this rule, and I could not locate an Arizona case that adopted it. However, it is consistent with Arizona's law on mature compulsory counterclaims. I predict[1] that Arizona would adopt the rule. I therefore apply it in this case.

### 1. Arizona Default Judgment

In 2016, Gen 2 entered into two promissory notes, one with Gaines and the other with Lahr. ECF No. 7 at 16. Keasberry personally guaranteed both notes. *Id.* In April 2021, Gaines and Lahr sued Keasberry in Arizona to collect on the two promissory notes and obtained a default judgment. ECF Nos. 6 at 2-3, 6; 7 at 3; 29-6. Gaines and Lahr do not argue that Jamani

---

[1] "When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its own best judgment in predicting how the state's highest court would decide the case." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) (quotation omitted).

1 │ was a party or Keasberry's privy with respect to the Arizona action, so I do not consider this

2 │ lawsuit as precluding Jamani's conspiracy counterclaim.  There is no dispute that as between

3 │ Keasberry, Gaines, and Lahr, the parties are the same and the judgment is final.  Consequently,

4 │ the only issue as to whether the Arizona default judgment bars Keasberry's current claims is

5 │ whether the two cases are based on the same claims that were or could have been brought.

6 │ <center>a.  Conspiracy</center>

7 │ Keasberry's conspiracy counterclaim alleges that Gaines and Lahr conspired with

8 │ Serruya and Kovacocy "to not report payments by Gen 2 on the Promissory Notes so that

9 │ Keasberry would be personally liable under the Guaranties for the debts of Gen 2." ECF No. 28

10 │ at 14.  According to the amended counterclaim, Gen 2 issued stock to Gaines and Lahr in 2020

11 │ and 2021 "for what appears to be no consideration." *Id.* at 12-13.  These stock transfers allegedly

12 │ were payments on the promissory notes but were not applied to the debt so that Gaines and Lahr

13 │ could pursue Keasberry on the guarantees.[2] *Id.* at 13-14.

14 │ Gaines and Lahr contend that Keasberry's conspiracy claim is precluded because he

15 │ could have appeared in the Arizona action and argued that the loan was repaid by the stock

16 │ transfers to Gaines and Lahr or was not owed for some other reason, such as the alleged

17 │ conspiracy to not repay the debt or to use the debt as leverage to gain control over Gen 2.  Gaines

18 │ and Lahr argue that the stock transfers to them were publicly disclosed in Gen 2's financial

19 │ reports before they filed the Arizona lawsuit on April 9, 2021, so Keasberry could have brought

20 │

---

21 │ [2] The amended counterclaim also alleges that after obtaining a writ of execution against
22 │ Keasberry, the counterdefendants conspired to use that writ to try to seize Jamani's interest in the
   │ Series A stock. ECF No. 28 at 15.  Because those allegations form the basis of Jamani's
23 │ conspiracy claim, I do not address them in relation to the Arizona action because Jamani was not
   │ a party to that case and therefore is not subject to claim preclusion based on the Arizona case.

<center>6</center>

his claims in that action.  Keasberry responds that his claims in this case arose after the default judgment in the Arizona case, so he is not claim precluded.  Specifically, he contends that he did not discover the factual basis for his claim until after the Arizona default judgment was entered because Gen 2's September 26, 2021 financial statement was the first time the 2020 and 2021 stock transfers to Gaines and Lahr were revealed.

These allegations arise from the same claims that were or could have been brought in the Arizona default action.  The purpose of the Arizona action was to recover on the promissory notes.  Keasberry's counterclaim arises out of the same transaction or occurrence that is the subject matter of Gaines and Lahr's attempt to collect on the notes.  If Keasberry had some reason that Gaines and Lahr should not recover on the notes, he could and should have brought compulsory counterclaims in that action and the evidence in the prior case would have been the same as in this one.

Although Keasberry contends he first learned of the stock transfers to Gaines and Lahr after the Arizona default judgment was entered, Gaines and Lahr point to publicly available Gen 2 financial documents that disclosed the stock transfers before the Arizona complaint was filed. *See* ECF No. 29 at 4 n.12.  They therefore have met their burden of showing Keasberry's conspiracy claim is precluded because Keasberry could have, with reasonable diligence, learned about the stock transfers in time to oppose the Arizona complaint.  Keasberry does not address these reports, other than to suggest that when he first knew or should have known about the stock transfers is a question of fact not suitable for resolution on a motion to dismiss.  But Keasberry presents no evidence or argument that the identified financial reports were not publicly available before the Arizona default judgment or why he could not, with reasonable diligence, have discovered them.  I therefore grant the plaintiffs' motion to dismiss Keasberry's conspiracy claim

1 against Gaines and Lahr with prejudice because it is claim precluded by the Arizona default

2 judgment.

3                                        *b. Aiding and Abetting*

4            Keasberry alleges that Serruya and Kovacocy owed him fiduciary duties because he was

5 a shareholder of Gen 2 and he was the guarantor of the promissory notes.[3] ECF No. 28 at 16.

6 Serruya and Kovacocy allegedly breached those duties by intentionally not repaying the notes

7 out of Gen 2's funds and instead handsomely compensating themselves as officers and directors

8 of Gen 2. *Id.*  Serruya and Kovacocy also allegedly diluted Keasberry's interest in the company

9 by issuing shares to Gaines and Lahr without consideration. *Id.*  Keasberry alleges that those

10 shares actually represent payment on the notes, but because they were not credited to the debt,

11 Keasberry became personally liable as the guarantor. *Id.* at 16-17.  Keasberry also alleges that

12 Serruya breached his fiduciary duties by refusing to step down after Keasberry voted him out,

13 causing Keasberry to be unable to operate Gen 2 for over a year and forcing him to file the

14 Control Action. *Id.* at 17.

15            Keasberry alleges that Gaines and Lahr aided and abetted these breaches by filing the

16 Arizona action to collect on the notes shortly after Keasberry voted Serruya out, naming

17 Keasberry instead of Gen 2 in the Arizona action, domesticating the Arizona default judgment in

18 Nevada (the Domestication Action), and then using a writ of execution they obtained in the

19 Domestication Action to attempt to seize Keasberry's shares in Gen 2 in a coordinated effort to

20 seize control of Gen 2. *Id.* at 9-11, 13.  According to the amended counterclaim, Gaines and Lahr

21

22 _____

[3] As stated above, I am not ruling on the counterclaims or third-party claim against Serruya and
23 Kovacocy.  However, the aiding and abetting claim against Gaines and Lahr is based on Serruya and Kovacocy allegedly breaching their fiduciary duties.  So, I discuss the allegations against Serruya and Kovacocy in that context.

1  did so in return for the Gen 2 stock they received without consideration, which was not credited

2  as repayment of the notes and so left Keasberry liable for the debt. *Id.* at 12-13.  Gaines and Lahr

3  also allegedly coordinated with Serruya and Kovacocy to use the writ of execution to try to seize

4  Keasberry's (and Jamani's) shares on the eve of a critical shareholder vote. *Id.* at 10-11, 13.

5         To the extent that Keasberry's claim against Gaines and Lahr is based on their aiding and

6  abetting Serruya and Kovacocy to cause Keasberry to be personally liable for the unpaid

7  promissory notes, Keasberry could and should have brought it as a compulsory counterclaim in

8  the Arizona action for the same reasons discussed above.  Keasberry could have, with reasonable

9  diligence, learned about the stock transfers to Gaines and Lahr in time to oppose the Arizona

10 complaint and the claim arises out of the same transaction or occurrence as Gaines and Lahr's

11 claim in the Arizona action regarding Keasberry's personal liability on the notes.

12        However, to the extent Keasberry's claim is based on Gaines and Lahr aiding and

13 abetting the dilution of Keasberry's interest in Gen 2, it is not claim precluded.  Although that is

14 also grounded in the stock transfers to Gaines and Lahr, it would involve different evidence,

15 including the various stock ownership percentages before and after the transfers.  Whether

16 Keasberry is personally liable on the promissory notes has no bearing on whether his interest in

17 Gen 2 was diluted by the stock transfers.

18        Additionally, to the extent this claim is based on Gaines and Lahr coordinating and

19 misusing the writ of execution to seize shares and disrupt the election, it is not claim precluded.

20 Those alleged events occurred after the Arizona action had concluded.  The claim was not

21 mature, so Keasberry is not barred from pursuing it.  I therefore grant the motion to dismiss

22 Keasberry's aiding and abetting claim as precluded only to the extent that it is based on Gaines

23

1   and Lahr aiding Serruya and Kovacocy in causing Keasberry to be personally liable for the

2   promissory notes.

3                    2.  Control Action

4        Gaines and Lahr also argue that Keasberry's counterclaims are precluded by the Control

5   Action that Keasberry filed in Nevada state court against Serruya and Kovacocy.  Gaines and

6   Lahr do not argue that Jamani is claim precluded based on the Control Action.  Keasberry

7   responds that he filed the Control Action before the stock transfers to Gaines and Lahr were

8   disclosed, so his claim was an after-arising claim that he was not required to assert in the Control

9   Action.  He also argues that the parties in this case and the Control Action are different and there

10  is no final judgment in the Control Action, so he is not claim precluded.

11       In the Control Action, Keasberry sought declaratory relief that he and Jamani were Gen

12  2's valid officers and directors. ECF No. 28 at 5.  Gaines and Lahr were not parties to that action,

13  nor do they argue they are privies with Serruya and Kovacocy in relation to that action.  Rather,

14  they argue that Keasberry could have amended his complaint in the Control Action to include not

15  only the breach of fiduciary duty claim against Serruya and Kovacocy, but also aiding and

16  abetting those breaches against Gaines and Lahr.

17       Gaines and Lahr cite no authority for the proposition that Keasberry had to amend to add

18  new parties or else be precluded from suing the absent parties.  Instead, they appear to argue that

19  because Keasberry could have brought the breach of fiduciary duty claim against Serruya and

20  Kovacocy in the Control Action but did not, the claim is precluded as to Serruya and Kovacocy,

21  and that preclusive effect extends to claims against Gaines and Lahr.

22       This argument fails for multiple reasons.  First, to the extent Serruya and Kovacocy

23  engaged in breaches of fiduciary duty after Keasberry filed the Control Action, those are after-

1 arising claims that are not claim precluded.  Second, claim preclusion is an affirmative defense

2 that must be raised or it is waived. *Schwartz v. Schwartz*, 591 P.2d 1137, 1139 (Nev. 1979).

3 Serruya and Kovacocy have not appeared in this action and have not raised the defense.  Gaines

4 and Lahr do not represent them and cannot assert it for them.  Consequently, it is not clear that

5 Keasberry cannot assert his claim against those defendants.  Finally, even if such claims were

6 precluded as to Serruya and Kovacocy, Gaines and Lahr cite no authority to support their

7 argument that any preclusive effect also extends to them.  I therefore deny claim preclusion as to

8 the Control Action.

9                     **B.  Failure to State a Claim**

10                            1.  Civil Conspiracy

11         Gaines and Lahr move to dismiss the civil conspiracy counterclaim for failure to state a

12 claim.  Because I dismissed Keasberry's civil conspiracy claim as precluded, I do not address it

13 here.  As for Jamani, Gaines and Lahr argue that he does not allege they conspired to commit an

14 underlying tort.  Specifically, they contend that the amended counterclaim does not plausibly

15 allege that they knew that Keasberry had sold the stock to Jamani prior to the time they tried to

16 seize it using the writ of execution in the Domestication Action.[4]  Finally, they assert there is no

17 plausible allegation of damages because Gaines and Lahr never obtained the Series A Preferred

18 stock and Jamani's expenditure of attorney's fees cannot constitute damages.  Gaines and Lahr

19 contend that if Jamani was damaged through the expenditure of attorney's fees, he should have

20 tried to recover them in the Domestication Action.

21

22    [4]  Gaines and Lahr also contend that their effort to execute on the Series A Preferred stock is

23 protected by the absolute litigation privilege. I previously rejected Gaines and Lahr's argument that their alleged misuse of the writ was protected by the litigation privilege. ECF No. 26 at 14-15.  I decline to reconsider that decision.

1    Jamani responds that he need not identify an underlying tort.  Rather, he contends that he

2  need only allege that Gaines and Lahr conspired to achieve an unlawful objective, which was

3  Gaines and Lahr's conversion of Jamani's shares and their abuse of process by using the writ to

4  try to seize these shares in the midst of the control fight on the eve of a shareholder election.

5  Jamani also contends that he can assert as damages the attorney's fees he expended in protecting

6  his shares from seizure when he was forced to intervene in the Domestication Action.

7    Under Nevada law, a civil conspiracy "consists of a combination of two or more persons

8  who, by some concerted action, intend to accomplish an unlawful objective for the purpose of

9  harming another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v.*

10  *Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).  The unlawful

11  objective does not necessarily need to be a tort. *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d

12  1049, 1052 (Nev. 2015) (en banc).

13    I dismiss this claim with prejudice because Jamani cannot plausibly allege damages.  The

14  only damages Jamani has identified are the attorney's fees he incurred in intervening in the

15  Domestication Action.  Under Nevada law, attorney's fees generally "are not recoverable absent

16  authority under a statute, rule, or contract." *Liu v. Christopher Homes, LLC*, 321 P.3d 875, 878

17  (Nev. 2014) (quotation omitted). "But, as an exception to the general rule, attorney fees may be

18  awarded as special damages in limited circumstances." *Id.* (simplified).  One of those

19  circumstances is "when a plaintiff becomes involved in a third-party legal dispute as a result of a

20  breach of contract or tortious conduct by the defendant." *Sandy Valley Assocs. v. Sky Ranch Ests.*

21  *Owners Ass'n*, 35 P.3d 964, 970 (Nev. 2001).  In that circumstance, the "fees incurred in

22  defending or prosecuting the third-party action could be damages in the proceeding between the

23  plaintiff and the defendant." *Id.*  The Supreme Court of Nevada gave as examples of this

1  category of cases, "claims against title insurance or bonds and breaches of duty to defend clause

2  in insurance or indemnity actions." *Id.*; *see also Liu*, 321 P.3d at 876, 880-81 (holding the

3  plaintiff was entitled to pursue as special damages attorney's fees that she incurred defending

4  against a third party's civil suit due to the defendant's breach of contract).

5         Here, Jamani intervened in the Domestication Action between Keasberry, Gaines, and

6  Lahr.  He thus incurred the fees in a direct suit with Gaines and Lahr, not in a third-party suit as

7  he argues, so he cannot collect attorney's fees as damages through that exception. *See Pardee*

8  *Homes of Nevada v. Wolfram*, 444 P.3d 423, 424 (Nev. 2019) ("clarify[ing] that attorney fees

9  incurred by a plaintiff in bringing a two-party breach-of-contract claim against a defendant do

10 not constitute special damages under the narrow and limited exceptions recognized by this

11 court").  Jamani's counterclaim does not fall within one of the exceptions to the general rule in

12 Nevada that attorney's fees are not recoverable absent authority under a statute, rule, or contract.

13 Because these are the only damages Jamani has identified to support this counterclaim, I dismiss

14 his civil conspiracy claim with prejudice.

15                          2.  Aiding and Abetting

16        Gaines and Lahr argue that Keasberry fails to state an aiding and abetting claim because

17 the allegations are conclusory.  Alternatively, they contend that the claim fails because Serruya

18 and Kovacocy owed no fiduciary duties to Keasberry as guarantor, so they could not have aided

19 and abetted them in breaching a fiduciary duty.  They contend that they were not involved in

20 Serruya and Kovacocy's compensation decisions, that those decisions are subject to the business

21 judgment rule, and that this claim is potentially reachable only through a derivative action.

22 Finally, they argue that the company's characterizations of the stock transfers show those were

23 not disguised loan repayments.  They contend that Keasberry has since signed company reports

13

1   that confirm these same characterizations, such as the shares being issued in relation to an

2   additional loan or identified as issued for services or finance costs.

3         Keasberry responds that the amended counterclaim clarifies that he is the only one

4   asserting this claim as a guarantor and shareholder of Gen 2.  He contends that he has adequately

5   alleged how Serruya and Kovacocy breached their fiduciary duties to him and how Gaines and

6   Lahr aided and abetted them.  Keasberry argues that whether the business judgment rule applies,

7   whether Serruya and Kovacocy breached their fiduciary duties, and whether Gaines and Lahr

8   aided and abetted those breaches are questions of fact not suitable to resolution on a motion to

9   dismiss.  He also argues the characterizations of the loans raise questions of fact.

10         "Aiding and abetting the breach of a fiduciary duty has four required elements: (1) there

11   must be a fiduciary relationship between two parties, (2) that the fiduciary breached, (3) the

12   defendant third party knowingly and substantially participated in or encouraged that breach, and

13   (4) the plaintiff suffered damage as a result of the breach." *Guilfoyle v. Olde Monmouth Stock*

14   *Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (en banc).  To establish the second element that

15   Serruya and Kovacocy breached their fiduciary duties, the counterclaim must plausibly allege

16   facts that (1) "rebut the business judgment rule" and (2) "demonstrate a breach of fiduciary duty

17   involving intentional misconduct, fraud, or another knowing violation of the law." *Guzman v.*

18   *Johnson*, 483 P.3d 531, 535-36 (Nev. 2021) (en banc) (citing Nev. Rev. Stat. § 78.138(7)).  "The

19   business judgment rule states that 'directors and officers, in deciding upon matters of business,

20   are presumed to act in good faith, on an informed basis and with a view to the interests of the

21   corporation.'" *Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 458 P.3d 336, 340 (Nev.

22   2020) (en banc) (quoting Nev. Rev. Stat. § 78.138(3)).

23   / / / /

a.  Conclusory Allegations

Reading the amended counterclaim as a whole, it adequately appriss Gaines and Lahr of the conduct Keasberry alleges they engaged in.  I therefore do not dismiss on this basis.

b.  Guarantor

Because Keasberry does not respond to Gaines and Lahr's guarantor argument and does not provide authority that a director of a corporation owes a fiduciary duty to a guarantor of the corporation's debts, he consents to granting this portion of the motion. LR 7-2(d).  I therefore dismiss Keasberry's aiding and abetting claim based on his guarantor status.

c.  Excessive Compensation

Under Nevada law, a "director breaches his or her fiduciary duty to the corporation by taking excess salaries." *Bedore v. Familian*, 125 P.3d 1168, 1173 n.24 (Nev. 2006).  It is not clear how Serruya and Kovacocy's compensation decision relates to the remaining aspects of Keasberry's aiding and abetting claim.  But to the extent it does, whether Serruya and Kovacocy breached their fiduciary duties by taking excessive salaries is a question of fact not suitable for determination at dismissal. *See F.D.I.C. v. Johnson*, No. 2:12-CV-209-KJD-PAL, 2014 WL 5324057, at *3 (D. Nev. Oct. 17, 2014).

However, Keasberry has not plausibly alleged that Gaines and Lahr were involved in Serruya and Kovacocy's decision about how much to compensate themselves or aided and abetted that decision.  Additionally, Keasberry has not addressed the argument that this claim is derivative in nature and does not belong to him as an individual shareholder, even though Gaines and Lahr raised the issue and I previously advised Keasberry that if "this is meant to be a derivative action, then the counterclaimants should make that clear in an amended pleading." ECF No. 26 at 19 n.7.  It appears that the claim that Serruya and Kovacocy paid themselves

excessive compensation is derivative under Nevada law. *See Bedore*, 125 P.3d at 1170 n.2

(treating as a derivative action a claim that corporate directors breached their fiduciary duty by

taking excessive compensation); *Parametric Sound Corp. v. Eighth Jud. Dist. Ct. in & for Cnty.*

*of Clark*, 401 P.3d 1100, 1108 (Nev. 2017) (en banc) (holding that "to distinguish between direct

and derivative claims, Nevada courts . . . consider only (1) who suffered the alleged harm (the

corporation or the suing stockholders, individually); and (2) who would receive the benefit of

any recovery or other remedy (the corporation or the stockholders, individually)?") (quotation

omitted).  Consequently, a claim that Gaines and Lahr aided and abetted Serruya and Kovacocy's

breach of their fiduciary duties also would be derivative.  The amended counterclaim does not

comply with the pleading requirements for a derivative action under Federal Rule of Civil

Procedure 23.1.

I therefore dismiss the aiding and abetting claim to the extent it is based on Gaines and

Lahr aiding and abetting Serruya and Kovacocy breaching their fiduciary duties by

overcompensating themselves.[5]  However, because these errors may be rectified by amendment,[6]

I will allow Keasberry a final opportunity to plead this claim.

e. Characterization of Stock Transfers

Finally, I do not dismiss on the basis that Gen 2's characterizations of the stock transfers

show those were not disguised loan repayments.  Whether the stock transfers evidence a breach

---

[5] Gaines and Lahr do not assert that any other aspects of the aiding and abetting claim are subject
to the business judgment rule or are derivative.  But I caution Keasberry to consider each aspect
of his breach of fiduciary duty and aiding and abetting claims to consider whether they are
properly brought as direct or derivative claims.

[6] I do not address whether Keasberry is claim precluded from bringing derivative claims because
the parties do not address it.

1  of fiduciary duty or aiding and abetting a breach of fiduciary duty are questions of fact not

2  suitable for resolution at this stage.

3  **III.  CONCLUSION**

4      I THEREFORE ORDER that the plaintiffs' motion to dismiss **(ECF No. 29) is**

5  **GRANTED in part** as set forth above.

6      I FURTHER ORDER that counterclaimant Brian Keasberry may file an amended "aiding

7  and abetting" counterclaim consistent with this order and my prior order by April 30, 2024.

8  Failure to do so will result in the aiding and abetting counterclaim going forward only on the

9  grounds of Gaines and Lahr aiding and abetting the dilution of Keasberry's interest in Gen 2 and

10  Gaines and Lahr coordinating and misusing the writ of execution to seize shares and disrupt the

11  shareholder election.

12      I FURTHER ORDER that nothing in this order dismisses any counterclaim or third-party

13  claim against Michael Kovacocy and Daniel Serruya.  However, Brian Keasberry may use this

14  opportunity to amend his breach of fiduciary duty claim against these parties to assert some or all

15  of it as a derivative action if he chooses to do so.

16      DATED this 2nd day of April, 2024.

17

18      _____
        ANDREW P. GORDON
        UNITED STATES DISTRICT JUDGE
19

20

21

22

23