SHLOMO S. SHERMAN, ESQ.
Nevada Bar No. 009688
**SHERMAN LAW, PLLC**
2620 Regatta Drive, Suite 102
Las Vegas, Nevada 89128
Telephone: (702) 900-2786
Facsimile: (702) 714-0971
E-Mail:   shlomo@shermanlawlv.com

Attorneys for Plaintiffs/Counter-Defendants,
IRA J. GAINES and LANNY LAHR

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| IRA J. GAINES, an individual, and LANNY LAHR, an individual,<br><br>                              Plaintiffs,<br><br>vs.<br><br>BRIAN KEASBERRY, an individual; AARIF JAMANI, an individual, inclusive,<br><br>                              Defendants. | Case No. 2:22-cv-01206-APG-VCF<br><br><br><br>**MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56; AND MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37** |
| BRIAN KEASBERRY, an individual; AARIF JAMANI, an individual,<br><br>                              Counterclaimants,<br><br>vs.<br><br>IRA J. GAINES, an individual, and LANNY LAHR, an individual,<br><br>                              Counter-Defendants. | |
| BRIAN KEASBERRY, an individual; AARIF JAMANI, an individual,<br><br>                              Third-Party Plaintiffs,<br><br>vs.<br><br>DANIEL SERRUYA, an individual, and MICHAEL KOVACOCY, an individual,<br><br>                              Third-Party Defendants. | |

Plaintiffs IRA J. GAINES and LANNY LAHR (collectively, "Plaintiffs"), and by and through their undersigned attorneys of the law firm Sherman Law, PLLC, hereby respectfully moves this Court,

pursuant to Fed. R. Civ. P. 56, for summary judgment in their favor in this action, and against Defendants BRIAN KEASBERRY ("Keasberry") and AARIF JAMANI ("Jamani," and collectively with Keasberry, "Defendants"). In this Motion, Plaintiffs also move for the imposition of sanctions against Defendants pursuant to Fed. R. Civ. P. 37.

This Motion is made and based upon Fed. R. Civ. P. 56 and 37, Chapter 112 of the Nevada Revised Statutes, the following Memorandum of Points and Authorities, exhibits attached hereto, the supporting declarations of Ira J. Gaines, Lanny Lahr, and Shlomo S. Sherman, Esq., the pleadings and records on file with the Court, of which judicial notice is respectfully requested pursuant to FRE 201, and any oral argument that may be considered by the Court at any hearing on this matter.

## I. INTRODUCTION

In its Complaint filed in this action, Plaintiffs stated a simple and clear claim for fraudulent transfer. This claim was based upon the noncontroversial facts that:

1. Plaintiffs had an enforceable judgment against Keasberry, arising from a loan made to Gen 2 Technologies, Inc. in 2017, which Keasberry guaranteed;
2. Keasberry owned the sole Series A Preferred Stock share in Gen 2 Technologies, Inc.;
3. Keasberry transferred the Series A Preferred Stock to Jamani just as he learned that Plaintiffs were pursuing the collection of their judgment;
4. Keasberry sold the Series A Preferred Stock to Jamani for a fraction of its value; and
5. the transfer left Keasberry without other non-exempt assets with which to repay the debt to Plaintiffs. These facts will be established below.

Plaintiffs conducted discovery with respect their claims, serving written requests for production of documents upon both Defendants. Responses were due in the first week of May, 2024. After granting Defendants an extension of time to respond to the discovery requests, Defendants served responses that did not include any documents. Documents were not produced until July 8, 2024.

The responsiveness was abysmal. The 542-page production consisted mainly of lengthy corporate records and SEC filings of Gen 2 Technologies. However, Defendants failed to include: (1) any meaningful valuation of the Series A Preferred Stock; (2) any communications between themselves relating to the transfer of the Series A Preferred Stock; or (3) any financial records of Keasberry

1 reflecting his financial condition at the time of the transfer. Plaintiffs promptly sent Defendants an e-mail, detailing the deficiencies, and requesting a meet and confer. At the parties' meet and confer, Defendants acknowledged the deficient production, and promised a prompt supplement. However, that supplement never came, despite multiple follow-up requests by Plaintiffs.

Consequently, Plaintiffs have been left with the universe of documents that exists essentially without Defendants' cooperation. Fortunately, that universe of documents is sufficient to demonstrate the absence of any genuine issue of material fact, and that Plaintiffs are therefore entitled to summary judgment.

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiffs refer to the concurrently-filed Statement of Undisputed Facts in Support of Motion for Summary Judgment, which is fully incorporated here by this reference. For the Court's convenience, however, the following are the material facts not genuinely in dispute.

### *The Debt and the Judgment*

1. On or about November 10, 2016, Gen 2 Technologies, Inc. fka BRK, Inc. ("Gen2") executed and delivered to each of the Plaintiffs a Secured Promissory Note in the principal amount of $50,000.00 (the "Notes"), memorializing two short-term loans of $50,000 each made by the Plaintiffs, respectively, to Gen2 (the "Loans").

2. Each of the Notes had an original maturity date of February 10, 2017.

3. To further secure the Notes and the Loans, Keasberry executed two Unconditional Guaranties guaranteeing the repayment of each of the Loans (collectively, the Guaranties").

4. Gen2 defaulted under the terms of the Notes and failed to repay the Loans on or before the Maturity Date.

5. Keasberry defaulted under the terms of the Guaranties by failing to cure Gen2's default, to satisfy its obligations under the Notes, and/or to repay the Loans.

6. Consequently, on or about April 9, 2021, Plaintiffs filed a lawsuit against Keasberry in the Superior Court of State of Arizona in and for the County of Maricopa, Case No. CV2021-051159 (the "Arizona Action").

7. Keasberry chose not to appear in the Arizona Action, not to offer any defenses, and

*Motion for Summary Judgment* (278-00002)   3

not to assert any counterclaims.

8. Plaintiffs prevailed in the Arizona Action, and on or about July 1, 2021, a default judgment was entered by the court in the Arizona Action in favor of Plaintiffs and against Keasberry (the "Arizona Judgment").

9. The Arizona Judgment awarded Plaintiffs the amount of $495,538.89, as of July 1, 2021, consisting up (i) the principal sum of $50,000.00 on account of Count 1 of the Complaint, in favor of Plaintiff/Judgment Creditor Ira Gaines; plus (ii) pre-judgment interest thereon in the amount of $192,000.00 as of June 10, 2021; plus (iii) pre-judgment interest thereon, from and after June 10, 2021, at the rate of $4,000.00 per month, in the amount of $4,000.00; plus (iv) the principal sum of $50,000.00 on account of Count 2 of the Complaint, in favor of Plaintiff/Judgment Creditor Lanny Lahr; plus pre-judgment interest thereon in the amount of $192,000.00 as of June 10, 2021; plus (v) pre-judgment interest thereon, from and after June 10, 2021, at the rate of $4,000.00 per month, in the amount of $4,000.00; plus (vi) attorneys' fees and costs incurred in connection with the Arizona Action in the amount of $3,538.89. Post-judgment interest continues to accrue on each the foregoing principal amounts at the rate of $4,000.00 each per month, and on the foregoing award of fees and costs at the rate of 4.25% per annum.

10. The Judgment is final and non-appealable, and has not been satisfied or repaid in any way since its entry.

11. On or about August 6, 2021, Plaintiffs domesticated the Arizona Judgment in the District Court of Clark County, Nevada (hereinafter, the "Judgment"). Plaintiffs subsequently amended their domestication pleadings on September 9, 2021.

12. At no point did Keasberry challenge the amount of enforceability of the Judgment. Indeed, Keasberry's sole response to Plaintiffs' efforts to enforce the Judgment was to claim certain funds as being exempt from execution.

***The Transfer***

13. In an effort to enforce the Judgment, Plaintiffs sought and obtained a writ of execution against Keasberry (the "Writ of Execution"), seeking to execute against "any and all property and/or accounts of, or held for the benefit of, BRIAN KEASBERRY, at GEN 2

1  TECHNOLOGIES, INC., located at 411 Eastgate Road, Suite A, Henderson, NV 89001, and/or any other location at which such accounts or property may be located, including without limitation any and all certificated and uncertificated securities of the judgment debtor."

14. The Writ of Execution was subsequently served upon both Keasberry and Gen 2 Technologies by the Las Vegas Constable, accompanied by a writ of garnishment.

15. Following service of the Writ of Execution and the Writ of Garnishment, Jamani filed an emergency motion to intervene (the "Intervention Motion") in the Nevada domestication proceedings (the "Domestication Action"), asserting that Keasberry had just transferred the Series A Preferred Stock to Jamani.

16. Prior to the filing of the Intervention Motion, Plaintiffs were unaware that the Series A Preferred Stock had been transferred to Jamani.

17. In Jamani's court filings relating to the Intervention Motion, Jamani testified under penalty of perjury that, on November 23, 2020 – well after Keasberry's default under the Guaranties – Keasberry executed a "Stock Purchase Agreement" (the "Agreement") pursuant to which he agreed to sell to Jamani his Series A Preferred Stock in Gen2.

18. The Series A Preferred Stock granted its owner a number of votes and/or voting power equal to 110% of the issued and outstanding shares of common stock Gen2 -- in other words, absolute control over Gen2.

19. Pursuant to the Agreement, however, Keasberry agreed to transfer to the Series A Preferred Stock to Jamani for a mere total of $30,000, with the initial $20,000 to be paid within 6 months of the date of the Agreement (or by May 21, 2021), and the remaining $10,000 to be paid within 12 months of the first payment.

20. The Agreement further provided that the Series A Preferred Stock would be transferred following the payment of the initial $20,000, and Jamani's execution of a note in favor of Keasberry for the balance of the purchase price.

21. At no point prior to the Intervention Motion was the Agreement disclosed to Plaintiffs by either Defendant, and Defendants have made no such allegation.

22. On or about March 11, 2022, the Second Judicial District Court for the State of

1  Nevada, County of Washoe, entered an order in which it specifically found that, "[i]n 2017, an
2  independent auditor valued Keasberry's Series A share a $237,630." This almost certainly referred
3  to the valuation performed by Doty Scott Enterprises, Inc., an independent valuation firm, which
4  valued the Series A Preferred Stock at $237,630 as of June 15, 2017.

5  23.  The above valuation was disclosed in Gen2's August 12, 2022 quarterly report,
6  signed and filed by Keasberry to the U.S. Securities and Exchange Commission as being the current
7  value of the Series A Preferred Stock.

8  24.  After the Doty Scott valuation, on October 31, 2018, Keasberry offered to sell the
9  Series A Preferred Stock to Daniel Serruya, then Gen 2's President, for $350,000.

10  25.  Based upon a $237,630 value as of June 15, 2017, an offer by Keasberry to sell the
11  Series a Preferred Stock for $350,000 on October 31, 2018, reflects his belief that the value of the
12  stock increased by nearly 50% in little over a year.

13  26.  Keasberry has offered no evidence that, over the two-year period between October
14  31, 2018, and the execution of the Agreement on November 20, 2020, the Series A Preferred Stock
15  declined in value from $350,000 to $30,000. Plaintiffs' specifically requested documents supporting
16  any contention that the value of the Series A Preferred Stock plummeted as suggested by Defendants
17  – and Defendants promised to produce such documents – but no such documents have ever been
18  produced.

19  27.  Jamani has testified under penalty of perjury that he made only the initial payment of
20  $20,000 to Keasberry on April 20, 2021.

21  28.  No evidence was provided of Jamani's execution of a note in favor of Keasberry for
22  the balance of the purchase price, and no evidence has been provided of Jamani's payment of the
23  *balance* of the purchase price. Indeed, in their discovery responses, Defendants promised to produce
24  all documents relating to any payment made or consideration received for the Series A Preferred
25  Stock – including in response to a specific request for evidence of the final $10,000 payment;
26  however, the only documents that they subsequently produced reflect the payment of the initial
27  $20,000.00.

28  29.  The Series A Preferred Stock was not promptly transferred to Jamani following his

*Motion for Summary Judgment* (278-00002)

6

initial payment of $20,000, as required by the Agreement.

30. Rather, Jamani has testified under penalty of perjury that the Series A Preferred Stock was transferred to him by Gen2's Stock Transfer Agent on September 20, 2021 – five months after his initial payment under the Agreement, but just over two months after the entry of the Arizona Judgment, just over one month after the domestication of the Judgment, and less than two weeks after Plaintiffs filed and served their amended domestication pleadings.

31. In seeking Jamani's intervention in the Domestication Action, Jamani's counsel represented that, "in November 2020, Keasberry continued to suffer from health issues. He also needed money. As a result, he offered to sell his Series A Preferred Stock to Mr. Jamani."

32. The same attorney who represents Jamani in the Domestication Action also represents Keasberry, in both this action, the Domestication Action and in a separate action in the Second Judicial District Court of Nevada relating to a dispute over control of Gen2.

33. Neither Keasberry nor Jamani have been able to explain why, if Keasberry was selling his Series A Preferred Stock because he needed money, he only required the initial payment *6 months* after he entered into the Agreement.

34. Neither Keasberry nor Jamani have been able to explain why, if Keasberry was selling his valuable Series A Preferred Stock because he needed money, he sold it for hundreds of thousands of dollars less than its value.

35. Thus, it is clear that the valuable Series A Preferred Stock was thus transferred from the Keasberry to Jamani without any reasonably equivalent value being delivered to the Keasberry.

36. It is also clear, based upon Defendants' own statements, that Keasberry's transfer of the Series A Preferred Stock was made while he was insolvent.

37. Jamani is not a person who received the transfer of the Series A Preferred Stock in good faith and for a reasonably equivalent value. Even if Defendants had provided evidence that the Series A Preferred Stock was only worth $30,000.00 at the time of the execution of the Agreement, Jamani paid only $20,000.00 – only two thirds of that value.

38. Jamani is a close associate of Keasberry's, sharing his legal counsel. Indeed, the Second Judicial District Court of the State of Nevada, County of Washoe, expressly found as

*Motion for Summary Judgment* (278-00002)

7

1  follows: "Keasberry is unsophisticated in corporate matters; he relies upon his friend and business
2  partner Jamani in all corporate matters. Serruya, through education and experience, is a sophisticated
3  businessman who understands corporate matters." Defendants themselves have described Jamani as
4  Keasberry's "friend and business partner."

5      39.    The Series A Preferred Stock has not yet been transferred by Jamani to any
6  subsequent transferee.

7  ***The Discovery***

8      40.    On April 5, 2024, Plaintiffs served requests for production of documents on both
9  Defendants, with a response deadline of May 5, 2024.

10      41.    On May 2, 2024, Defendants requested a one-week extension of the response
11  deadline, and on May 8, 2024, Defendants requested a second extension of the response deadline.
12  Plaintiffs granted both extensions, emphasizing the need for the responses in order to meet pending
13  expert discovery deadlines, anticipating that Keasberry would be providing evidence of his financial
14  condition both before and after the transfer.

15      42.    On May 17, 2024, Defendants served responses to Plaintiffs' discovery requests (the
16  "Responses") that consisted solely of objections, and which included no documents, although they
17  promised a future production of "all non-privileged documents responsive to this request in his
18  custody or control that are otherwise subject to production under the applicable civil rules."

19      43.    Defendants sent the Responses under cover of an e-mail that said, "I also suspect we
20  will need to have a meet and confer over a number of the requests that seek personal financial
21  information. At minimum we are going to need a stipulated confidentiality and protective order,
22  which for some reason I thought we had done, but I could not find one." The Responses themselves
23  similarly objected "to the Requests to the extent they seek trade secrets, commercially sensitive
24  information, or confidential proprietary or financial data of Defendant or third parties to which
25  Defendant owes an obligation of confidentiality entitled to protection under FRCP 26(c)(1)(g) and
26  NRS 49.325," and "on the grounds that the documents sought are highly confidential and private as
27  it seeks personal financial information."

28      44.    At no point have Defendants requested a protective order from this Court as would

SHERMAN LAW, PLLC
2620 Regatta Drive, Suite 102
Las Vegas, Nevada 89128
Tel: (702) 900-2786 / Fax: (702) 714-0971

1  be required by Fed. R. Civ. P. 26(c)(1)(g).[1]

2      45.    Defendants did not actually produce the promised documents until July 8, 2024 – nearly two months after they were due.

4      46.    Defendants' discovery production was woefully deficient, including scant documents relating to the valuation of the Series A Preferred Stock, no documents relating to Keasberry's financial condition before and after the transfer of the Series A Preferred Stock, and no correspondence between Keasberry and Jamani relating to the Agreement, Jamani's payment, or the transfer. Nor were the produced documents organized and labeled to correspond to the categories in the discovery requests. In fact, there was nothing in the document production to indicate whether they were being produced by Jamani or by Keasberry, as the documents all bore the same prefix "Gen2." Although Defendants produced 542 pages of documents, they consisted primarily of lengthy corporate records and SEC filings of Gen 2 Technologies, Inc.

13      47.    Consequently, on or about July 11, 2024, Plaintiffs sent Defendants an e-mail detailing several of the deficiencies in their responses and requesting a meet and confer.

15      48.    The parties finally conferred telephonically on August 12, 2024, during which Defendants acknowledged the deficiencies in their discovery responses, and promised to supplement those responses in short order.

18      49.    However, despite follow-up e-mails from Plaintiffs on August 23 and August 27, 2024, Defendants have – as of this filing – not provided any supplement to their original Responses and document production.

### III. LEGAL AUTHORITY

#### A. Plaintiffs Are Entitled to Discovery Sanctions Pursuant to Fed. R. Civ. P. 37.

Fed. R. Civ. P. 37(c)(1) provides, in pertinent part, as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

---

[1] *See* Sherman Declaration, ¶ 24.

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) —(vi).

The sanctions listed in Rule 37(b)(2)(A)(i) —(vi) include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part; [and]

(vi) rendering a default judgment against the disobedient party.

These sanctions are also available pursuant to Rule 37(d)(1)(A)(ii), which provides that "[t]he court … may, on motion, order sanctions if … a party, after being properly served with … a request for inspection under Rule 34 , fails to serve its answers, objections, or written response," and that "[a] failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."

Fed. R. Civ. P. 26(a)(ii) requires that "a party must, without awaiting a discovery request, provide to the other parties … a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Sub-part (e)(1)(A) adds that "[a] party who has made a disclosure under Rule 26(a) —or who has responded to a[] … request for production[] —must supplement or correct its disclosure or response [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete [], and if the additional [] information has not otherwise been made known to the other parties during the discovery process or in writing."

Finally, Fed. R. Civ. P. 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."

The Court is aware that there is no protective order in place, nor has one ever been sought. Thus, there is no excuse for Defendants to provide full and complete responses to Plaintiffs discovery requests. By their own admission at the parties' meet and confer, they have not done so. The have not complied with Rule 26(a) or (e), and they have not complied with Rule 34(b)(2)(E)(i). The bulk documents that they have produced are not even assigned to a particular one of the two Defendants. Putting aside defense counsel's inherent conflict of interest in representing both sides of a fraudulent transfer, Plaintiffs served discovery requests upon each Defendant separately, and are entitled to a document production that links the documents to the particular requests to which they are responding, and the particular Defendant that is offering the response.

Defendants' initial disclosures contained very little documentation that would support their defenses to Plaintiffs' claims. They included:

1. Gen 2 Technologies, Inc.'s Consolidated Financial Statements (which, *inter alia*, confirmed the $237,630 valuation of the Series A Preferred Stock);
2. A more legible copy of the Stock Purchase Agreement;
3. Proof of Jamani's initial $20,000 wire payment to Keasberry;
4. An e-mail from Daniel Serruya to the stock transfer agent regarding Plaintiffs' writs of execution and garnishment; and
5. A news article purportedly about Plaintiff Ira Gaines.

Due, in part, to the dearth of documents in Defendants' initial disclosures, Plaintiffs served Defendants with direct discovery requests, seeking documents in Defendants' position relevant to the parties' claims and defenses. These included documents that unquestionably relevant and unquestionably in Defendants' possession, such as Keasberry's documents demonstrating whether Keasberry was or was not insolvent at the time of or as a result of the transfer. Nevertheless, despite direct and repeated requests, Defendants have failed to produce *any* evidence in support of these key affirmative defenses:

*Motion for Summary Judgment* (278-00002)

11

- o "Keasberry received reasonably equivalent value in exchange for the Series A Preferred Stock";
- o "When Keasberry made the transfer at issue, he did not intend to hinder or delay or defraud Plaintiffs";
- o "Keasberry was not insolvent, if he ever was, at the time of the transfers at issue";
- o "Keasberry was not made insolvent, if he ever was, at the time of the transfers at issue"; and
- o "The transfer at issue did not make Keasberry unable to pay his debts as they came due."

Consequently, Plaintiffs are entitled – at a bare minimum – to the sanctions articulated in Fed. R. Civ. P. 37(c)(1) that would prevent Defendants from using any information not disclosed or produced as evidence on a motion, at a hearing, or at a trial.

Further, Plaintiffs respectfully request the Court issue sanctions in the form set forth in Rule 37(b)(2)(A)(i) and (ii), and direct that the matters that the facts alleged by Plaintiffs and for which Plaintiffs directly sought discovery from Defendants, be taken as established for purposes of the action, and prohibiting Defendants from opposing Plaintiffs' claims.

### B. Plaintiffs Are Entitled to Summary Judgment Pursuant to Fed. R. Civ. P. 56.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 873 (9th Cir. 1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982) (citation omitted).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *See*, *e.g.*, *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A dispute regarding a material fact is

*Motion for Summary Judgment* (278-00002)

12

considered 'genuine' "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the pleadings and other proof must be construed in the light most favorable to the nonmoving party, the nonmoving party cannot "simply show that there is some metaphysical doubt" as to the operative facts in order to avoid summary judgment in the moving party's favor. *Matsushita Elec. Indust. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

    1. <u>Plaintiff Are Entitled to Summary Judgment Under NRS § 112.180(1)(a).</u>

Pursuant to NRS § 112.180(1)(a), "[a] transfer made [] by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [] [w]ith actual intent to hinder, delay or defraud any creditor of the debtor."

Subsection (2) provides that as follows:

> In determining actual intent under paragraph (a) of subsection 1, consideration may be given, among other factors, to whether:
>
>   (a)  The transfer or obligation was to an insider;
>
>   (b)  The debtor retained possession or control of the property transferred after the transfer;
>
>   (c)  The transfer or obligation was disclosed or concealed;
>
>   (d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>   (e)  The transfer was of substantially all the debtor's assets;
>
>   (f)  The debtor absconded;
>
>   (g)  The debtor removed or concealed assets;
>
>   (h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>   (i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>   (j)  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Generally, the creditor bears the burden of proof as to insolvency and inadequacy of consideration. *Sportsco Enterprises*, 112 Nev. at 632 (citing *Matusik v. Large*, 85 Nev. 202, 205, 452 P.2d 457, 458 (1969)). Once a creditor demonstrates the existence of certain indicia or badges of fraud, however, the burden shifts to the defendant to present rebuttal evidence that a transfer was not fraudulent. *Id.* (citing *Territorial Say. & Loan Ass'n v. Baird*, 781 P.3d 452, 462 n. 18 (Utah Ct. App. 1989); *Erjavec v. Herrick*, 827 P.2d 615, 617 (Colo. Ct. App. 1992)); *see also Pat Clark Sports, Inc. v. Champion Trailers, Inc.*, 487 F. Supp. 2d 1172, 1178 (D. Nev. 2007) (same).

Plaintiffs have established that Jamani is an "insider" of Keasberry, which, pursuant to NRS 112.150(7)(a), includes "a general partner of the debtor." Jamani is acknowledged to be – and has been explicitly determined by a court to be, Keasberry's "friend and business partner."

Despite the Stock Purchase Agreement calling for the transfer of the Series A Preferred Stock as soon as Keasberry received the initial payment of $20,000, Keasberry continued to hold onto the stock for an additional five months *after* receiving that payment.

The existence of the Stock Purchase Agreement was not disclosed, nor was the transfer itself disclosed to Plaintiffs until Jamani filed his Intervention Motion.

The Stock Purchase Agreement was entered into after Keasberry had already guaranteed Plaintiffs' Loans, and after the Loans were already in default. The actual transfer of the Series A Preferred Stock was executed just after Plaintiffs domesticated their Judgment and began collection efforts.

Considering that Keasberry was apparently short on funds, to the point that he was willing to sell his control of a public-traded company for a mere $30,000, Plaintiffs have met their burden of proving that the transfer was of substantially all of Keasberry's assets.

The value of the consideration received by Keasberry was not reasonably equivalent to the value of Series A Preferred Stock. By all available valuations, the stock was worth several hundred thousand dollars, yet Keasberry sold it for $30,000 – and then only required Jamani to pay $20,000 of that amount.

*Motion for Summary Judgment* (278-00002)

14

Keasberry was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. He sold the stock because he needed the money, at a time when he was already in substantial debt to Plaintiffs. While Plaintiffs attempted to obtain Keasberry's financial records to affirmatively demonstrate his insolvency, Defendants deliberately withheld those records.

Indeed, under circumstances in which Plaintiffs obtained a writ of execution solely against *Keasberry's* property, *Jamani* suddenly intervened, demonstrating collusion between the two of them to thwart Plaintiffs' collection efforts.

To the extent that any of the elements of this claim may have been further supported by documents that either are or should have been in Defendants' possession, but that Defendants failed to produce, Plaintiffs respectfully request that the Court draw an inference, under Fed. R. Civ. P. 37, that those documents would have supported Plaintiffs' claims.

Under these circumstances, Plaintiffs submit that they have demonstrated the absence of any genuine dispute of material fact that Keasberry's transfer to Jamani of the Series A Preferred Stock constituted a fraudulent transfer under NRS § 112.180(1), and respectfully requests that summary judgment be entered with respect to this claim.

2. Plaintiff Are Entitled to Summary Judgment Under NRS § 112.180(1)(b).

Pursuant to NRS § 112.180(1)(b), "[a] transfer made [] by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [] [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due."

The drafters of this provision recognized that in many circumstances, it may be difficult to prove intent to commit "actual" fraud. Accordingly, NRS 112.180(2) provides for the avoidance and recovery of "constructive" fraudulent transfers where a combination of factors are present. Proof of intent is not required. *See, e.g.*, *Sportsco Enterprises v. Morris*, 112 Nev. 625, 631, 917 P.2d 923,

*Motion for Summary Judgment* (278-00002)

15

937 (1996) ("Fraudulent conveyance under NRS Chapter 112 does not require proof of intent to defraud.") (citing NRS 112.190(1)).

Also, the term "reasonable" calls for the application of an objective standard. *See, e.g., Liston v. Las Vegas Metro. Police Dep't*, 111 Nev. 1575, 1579, 908 P.2d 720, 723 (1995) (constructive discharge occurs when a "reasonable person ... would have felt that he was forced to quit because of intolerable ... working conditions" and thus requires an objective standard); Aziz v. Eldorado Resorts, LLC, 72 F. Supp. 3d 1143, 1152 (D. Nev. 2014) (whether probable cause to initiate criminal proceedings is an objective standard, meaning whether a "reasonable" attorney would have consider the action legally tenable).

As demonstrated above, the value of the consideration received by Keasberry was not reasonably equivalent to the value of Series A Preferred Stock. By all available valuations, the stock was worth several hundred thousand dollars, yet Keasberry sold it for $30,000 – and then only required Jamani to pay $20,000 of that amount. Consequently, even accepting Defendants' contention that the Series A Preferred Stock was only worth $30,000 (despite all of the valuations to the contrary), Keasberry still only received two-thirds of that value in consideration.

In fact, although Defendants claim that $30,000 was a reasonably equivalent value in exchange for the Series A Preferred Stock, they make this claim knowing that, during the very period that the Stock Purchase Agreement was executed, they were both battling to *regain control of Gen 2 Technologies, Inc.*

Under these circumstances, as discussed above, Keasberry agreed to transfer control of the company and his Series A Preferred Stock for a mere $30,000, after he had defaulted on his guaranties of Plaintiffs' loan, and while he was engaged in wrestling for control of a company that he considered valuable. Based on an objective standard, this Court can readily determine that a reasonable party in that position would believe that Keasberry's remaining assets were unreasonably small in relation to the business or transaction, or that Keasberry would be capable of continuing to pay his debts as they came due.

Keasberry admittedly sold the stock because he *needed money*, at a time when he was already in substantial debt to Plaintiffs. While Plaintiffs attempted to obtain Keasberry's financial records to affirmatively demonstrate his insolvency, Defendants deliberately withheld those records.

To the extent that any of the elements of this claim may have been further supported by documents that either are or should have been in Defendants' possession, but that Defendants failed to produce, Plaintiffs respectfully request that the Court draw an inference, under Fed. R. Civ. P. 37, that those documents would have supported Plaintiffs' claims.

Under these circumstances, Plaintiffs submit that they have demonstrated the absence of any genuine dispute of material fact that Keasberry's transfer to Jamani of the Series A Preferred Stock constituted a fraudulent transfer under NRS § 112.180(2), and respectfully requests that summary judgment be entered with respect to this claim.

### 3. Plaintiff Are Entitled to Summary Judgment Under NRS § 112.190.

Pursuant to NRS § 112.190(1), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Again, the term "reasonable" calls for the application of an objective standard.

As demonstrated above, Plaintiff's claims against Keasberry go back to 2016, and February 10, 2017, at the latest – well before execution of the Stock Purchase Agreement was executed, much less consummated. The value of the consideration received by Keasberry was *not* reasonably equivalent to the value of Series A Preferred Stock. By all available valuations, the stock was worth several hundred thousand dollars, yet Keasberry sold it for $30,000 – and then only required Jamani to pay $20,000 of that amount. Consequently, even accepting Defendants' contention that the Series A Preferred Stock was only worth $30,000 (despite all of the valuations to the contrary), Keasberry *still* only received two-thirds of that value in consideration. There is no genuine dispute as to these facts.

Keasberry has acknowledged that he sold this valuable stock because he *needed money*, at a time when he was already in substantial debt to Plaintiffs. While Plaintiffs attempted to obtain Keasberry's financial records to affirmatively demonstrate his insolvency, Defendants deliberately withheld those records. Under these circumstances, as discussed above, Keasberry's agreement to transfer control of the company and his Series A Preferred Stock for a mere $30,000, after he had defaulted on his guaranties of Plaintiffs' loan, demonstrates that he was either insolvent at the time, or became insolvent as a result of the transfer.

Pursuant to NRS § 112.160, a debtor is "insolvent" "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation," and a "debtor who is generally not paying his or her debts as they become due is presumed to be insolvent."

Keasberry certainly did not pay his debt to Plaintiffs after it became due; and his apparent desperate need for funds required the sale of the most valuable stock in a company that he was trying to control.

To the extent that any of the elements of this claim may have been further supported by documents that either are or should have been in Defendants' possession, but that Defendants failed to produce, Plaintiffs respectfully request that the Court draw an inference, under Fed. R. Civ. P. 37, that those documents would have supported Plaintiffs' claims.

Under these circumstances, Plaintiffs submit that they have demonstrated the absence of any genuine dispute of material fact that Keasberry's transfer to Jamani of the Series A Preferred Stock constituted a fraudulent transfer under NRS § 112.190, and respectfully requests that summary judgment be entered with respect to this claim.

///
///
///
///
///
///
///

*Motion for Summary Judgment* (278-00002)

18

## IV.  CONCLUSION

After incurring an obligation to Plaintiffs that he could not afford to repay, Keasberry contracted to transfer stock to Jamani for an amount that was only 10% of the stock's value. Keasberry pulled the trigger on the actual transfer just as Plaintiffs were posed to execute upon their judgment against him. As noted above, there is no genuine dispute as to these operative facts, and so Plaintiffs respectfully request that the Court enter an order granting the Motion in its entirety.

DATED this 26th day of February, 2025.

**SHERMAN LAW, PLLC**

By _____
SHLOMO S. SHERMAN, ESQ.
Nevada Bar No. 009688
2620 Regatta Drive, Suite 102
Las Vegas, Nevada 89128

Attorneys for Plaintiffs/Counter-Defendants,
IRA J. GAINES and LANNY LAHR

*Motion for Summary Judgment* (278-00002)

19

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Sherman Law, PLLC and that on the 26th day of February, 2025, I caused to be served a true and correct copy of foregoing **MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56; AND MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37** in the following manner:

(ELECTRONIC SERVICE) The above-referenced document was electronically served on the date hereof through the Notice of Electronic Filing automatically generated by the Court's facilities to those parties listed on the Court's Master Service List.

/s/ *Shlomo S. Sherman*
An Employee of SHERMAN LAW, PLLC

*Motion for Summary Judgment* (278-00002)

20